UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JOHN HENRY REITZ,            )
                             )
         Plaintiff           )
                             )
v.                           )      No. 1:10-cv-94-JAW
                             )
MICHAEL J. ASTRUE,           )
Commissioner of Social Security, )
                             )
         Defendant           )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that he was disabled by lumbar disc herniation for a closed period from August 31, 2005, through December 31, 2006, capable during that period of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had disc herniation of the lumbar spine, Finding 3, Record at 12; that, within 12 months of his alleged

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on December 17, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

onset date of disability, he had regained the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), Finding 5, *id*. at 13;[2] that, considering his age (39 years old, defined as a younger individual, on the alleged disability onset date, August 31, 2005), education (limited), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could have performed at all relevant times, Findings 7-10, *id*. at 14; and that he, therefore, had not been under a disability at any time relevant to the decision, Finding 11, *id*. at 15.[3] The Appeals Council declined to review the decision, *id*. at 2-4, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981; 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain

---

[2] The administrative law judge cited 20 C.F.R. §§ 404.1567(b) and 416.967(b). *See* Finding 5, Record at 13. However, those subsections pertain to the ability to perform light, rather than sedentary, work. The administrative law judge made clear in the body of his decision that he found the plaintiff capable of sedentary, rather than light, work. *See id*. at 13-14.

[3] For purposes of his application for SSD benefits, the plaintiff met the insured status requirements of the Social Security Act at all times relevant to the decision. *See* Finding 1, Record at 11.

substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff complains that the administrative law judge erred in (i) purporting to give significant weight to the RFC opinion of Disability Determination Services ("DDS") nonexamining consultant Donald Trumbull, M.D., but omitting to include, or explain why he did not include, Dr. Trumbull's finding that he required a sit-stand option, and (ii) determining, on the basis of the raw medical evidence, that the plaintiff did not require a sit-stand option. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (Docket No. 8) at 2-4. I conclude, and recommend that the court find, that reversal and remand are warranted on the basis of the first point of error.

On July 5, 2005, just prior to plaintiff's alleged onset date of disability, he underwent spinal surgery in the form of an L4-5 discectomy performed by James W. Turner, M.D. *See* Record at 188. On July 13, 2005, the plaintiff's primary care provider, Eileen Runcy, FNP, advised him against any heavy lifting or bending until he followed up with Dr. Turner. *See id.* at 220. She noted that he reported that he was feeling well: he stated that he had trouble bending and sitting but could walk around pretty well and had walked almost a mile the previous day. *See id.* at 221.

The plaintiff did not attend follow-up appointments with Dr. Turner scheduled for July 25 and August 4, 2005. *See id.* at 207. On September 12, 2005, he was seen by both FNP Runcy and Dr. Turner. FNP Runcy stated that she had advised the plaintiff "to speak to the surgeon and

3

get a list of specific recommendations in terms of his job, how much he can lift, how much standing he can do and bending etc so that he knows his specific limitations." *Id*. at 219.

In his progress note of the same date, Dr. Turner noted:

[The plaintiff] is now two months out from his surgery. His degree of discomfort has abated. He is on no narcotic medications at this time.

Unfortunately he has not been involved in physical therapy and ordinarily his line of work is quite physically demanding.[4] I am going to provide him with a prescription for physical therapy at this time and an exercise booklet. I would think that after two to three weeks of therapy, he should be considered able to return to work. I have not placed any medical restrictions on him.

*Id*. at 207.[5]

On September 21, 2005, Dr. Trumbull completed the physical RFC assessment in question. *See id*. at 210-17. In so doing, he had the benefit of FNP Runcy's July 13, 2005, office note but not her office note of September 12, 2005, or that of Dr. Turner. *See id*. at 217. Dr. Trumbull deemed the plaintiff capable, *inter alia*, of occasionally lifting/carrying 20 pounds, frequently lifting/carrying 10 pounds, standing and/or walking (with normal breaks) for a total of at least two hours in an eight-hour workday, and sitting (with normal breaks) for a total of about six hours in an eight-hour workday, although he noted that the plaintiff had to periodically alternate sitting and standing to relieve pain or discomfort. *See id*. at 211. Specifically, he stated that the plaintiff might stand/stretch for a few minutes hourly to relieve stiffness/discomfort. *See id*.

---

[4] The plaintiff worked for a masonry company prior to his surgery, lifting panels that weighed as much as 150 pounds each. *See* Record at 21-23. Following his surgery, he resigned from that job, which he felt physically incapable of performing, and took on odd jobs, although he did not earn enough to preclude a finding of disability for the closed period on the basis of work activity alone. *See id*. at 11, 22-24, 33.
[5] The plaintiff presented for a physical therapy intake on October 6, 2005. *See* Record at 271-72. Although the physical therapist contemplated a course of therapy twice a week for four weeks, *see id*. at 272, there is only one physical therapy progress note of record, for October 11, 2005, *see id*. at 273.

The plaintiff followed up with FNP Runcy on November 14, 2005. *See id*. at 219. She noted that he reported that the pain in his leg had been relieved by the surgery and he was back to work full-time, but he had occasional back pain at night, especially the harder he worked. *See id*. He requested a prescription for Vicodin to use at night as needed for pain relief, which FNP Runcy provided. *See id*. at 218-19.

On February 1, 2006, a second DDS nonexamining consultant, Robert Hayes, D.O., completed a physical RFC assessment. *See id*. at 249-56. Dr. Hayes, who had the benefit of review of the September 12, 2005, office note of Dr. Turner and the November 14, 2005, office note of FNP Runcy, *see id*. at 256, found the plaintiff capable, *inter alia*, of occasionally lifting and/or carrying 50 pounds, frequently lifting and/or carrying 25 pounds, standing and/or walking (with normal breaks) for a total of about six hours in an eight-hour workday, and sitting (with normal breaks) for a total of about six hours in an eight-hour workday. *See id*. at 250. He found no need for a sit-stand option. *See id*.

Subsequent to the completion of Dr. Hayes' assessment, the plaintiff saw Nadeem S. Ali, M.D., of Eastport Health Care on several occasions: August 15, 2006, September 26, 2006, January 5, 2007, and July 11, 2007. *See id*. at 275-80, 282-84.

Dr. Ali noted on August 15, 2006, that the plaintiff "[o]verall . . . has been doing pretty alright." *Id*. at 282. He stated that the plaintiff did continue to have chronic back pain and usually, at the end of a workday, needed two Vicodin to help him with the pain so that he could fall asleep. *See id*. at 283. On September 26, 2006, the plaintiff visited Dr. Ali "for disability papers." *Id*. at 284. Dr. Ali noted:

> He states that he is unable to carry out his usual job that included lifting 100 pound weight and doing that very frequently throughout the course of his working day. He states that he is able to carry his groceries and walk with them. He avoids frequent bending or stooping and finds it very uncomfortable to crouch or

5

>     crawl. He does not have any numbness or tingling or weakness of an extremity. . . . He does, however, continue to have chronic lower back pain and says that [without] the Vicodin he would not be able to go through his day especially at work. Sitting for a prolonged period of time does also sometime exacerbate his chronic lower back pain as does standing and walking for a significant period of time.

*Id*.

The plaintiff consulted Dr. Ali on January 5, 2007, complaining that he had been working with a friend a week earlier, went down to pick something up and heard a pop in his back, after which he had numbness and burning in the lateral aspect of his thigh. *See id*. at 278. Dr. Ali diagnosed a lumbosacral strain and advised no bending, lifting, pulling, or pushing for two weeks. *See id*. at 279.[6] On July 11, 2007, the plaintiff saw Dr. Ali for back pain, among other conditions. *See id*. at 276-77.

> In assessing the plaintiff's RFC, the administrative law judge stated, in relevant part:
>
> In terms of the [plaintiff's] alleged inability to work at all during the period at issue herein, the undersigned notes that he was described as having returned to full-time work in November 2005 and his treating sources indicated only that he needed to avoid heavy lifting even at that early date (Exhibit 9F, p.2). He had not followed prescribed physical therapy, but rather, was seen on only one occasion in October 2005 (Exhibit 12F). He remained quite active in September 2006 and even acknowledged th[e] ability to carry his groceries and to walk with them.
>
> As for the opinion evidence, the undersigned notes that no treating or examining physician described the [plaintiff] as disabled or as unable to work for the period alleged. Dr. Turner wrote, in September 2005[,] that he expected the [plaintiff] to be able to return to work after 2-3 weeks of treatment (Exhibit 7F). In the absence of any treating physician statements, the undersigned affords the opinion of State Agency physician Dr. Donald Trumbull significant weight (Exhibit 8F). He reviewed the record in September 2005 and concluded that the [plaintiff] could even perform light work, but for the need to stand and stretch a few minutes each hour. A light work capacity presumes an ability to perform sedentary work. This is consistent with the [plaintiff's] activity level even at that early date as he was able to walk almost a mile by self-report.

---

[6] Dr. Ali stated: "Inspection of the lumbar spine reveals normal lumbar lodosis. There is tenderness to palpation of the lumbar spine. Range of motion of lumbar spine is normal. The lumbar spine is stable. The Straight Leg Raising Test is positive. SLR positive on right side." Record at 279.

*Id.* at 14.

As the plaintiff correctly notes, *see* Statement of Errors at 2, an administrative law judge may not simply ignore the opinions of DDS expert consultants, but must take them into consideration and explain the weight accorded them, *see, e.g.*, Social Security Ruling 96-6p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010) ("SSR 96-6p"), at 129 ("Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. . . . Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

The administrative law judge provided no explanation whatsoever for rejecting that portion of Dr. Trumbull's RFC assessment pertaining to the need to stand and stretch a few minutes per hour. To the contrary, he seemed to cite it with favor. *See* Record at 14. Its omission could as plausibly have been an oversight as a considered choice. Although there is evidence in the record favoring a finding that the plaintiff required no sit-stand option, including the Hayes RFC assessment, it is the job of the administrative law judge, not the courts or the commissioner's counsel on appeal, to resolve such conflicts in the first instance. *See, e.g., Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").[7]

---

[7] At oral argument, counsel for the commissioner contended that (i) a need to stand and stretch cannot fairly be described as a need for a "sit-stand option," and (ii) any error in failing to discuss the limitation was harmless, the administrative law judge having implicitly rejected it. With respect to the latter point, she argued that the
*(continued on next page)*

7

As the plaintiff points out, *see* Statement of Errors at 2-3, the issue is material. The administrative law judge relied solely on application of the so-called "Grid," Appendix 2 to Subpart P, 20 C.F.R. § 404, to reach his conclusion of non-disability at Step 5. *See* Record at 15.

Use of the Grid is appropriate when a rule accurately describes an individual's capabilities and vocational profile. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 462 & n.5 (1983). When a claimant's impairments involve only limitations related to the exertional requirements of work, the Grid provides a "streamlined" method by which the commissioner can meet his burden of showing there is other work a claimant can perform. *See, e.g., Heggarty v. Sullivan*, 947 F.2d 990, 995 (1st Cir. 1991). However, in cases in which a claimant suffers from nonexertional as well as exertional impairments, the Grid may not accurately reflect the availability of other work he or she can do. *See, e.g., id.* at 996; *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989).[8] Whether the commissioner may rely on the Grid in these circumstances depends on whether a nonexertional impairment "significantly affects [a] claimant's ability to perform the full range of jobs" at the appropriate exertional level. *Id.* (citation and internal quotation marks omitted). If a nonexertional impairment is significant,

---

administrative law judge noted that he had given only "significant" weight to Dr. Trumbull's opinion, not that he had adopted it *in toto*, and that he had also noted that Dr. Turner expected the plaintiff to return to work for the masonry company, *see* Record at 14, which she reasoned is heavy work inconsistent with a need to stand and stretch periodically. Neither point is persuasive. The limitation in question clearly constitutes a sit-stand option, entailing a restriction on the capacity to sit in the form of a need to stand periodically. *See id*. at 211. As noted above, the presence of record evidence supporting a lack of need for a sit-stand option does not render the error harmless in this case because the administrative law judge's discussion is insufficient to explain his reasoning, preventing meaningful judicial review.

[8] "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining ability to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010) ("SSR 96-9p"), at 156. "Nonexertional capacity considers any work-related limitations and restrictions that are not exertional." *Id*. "Therefore, a nonexertional limitation is an impairment-caused limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling." *Id*.

the commissioner generally may not rely on the Grid to meet his Step 5 burden but must employ other means, typically use of a vocational expert. *See, e.g., id.*

Even in cases in which a nonexertional impairment is determined to be significant, however, the commissioner may yet rely exclusively upon the Grid if "a non-strength impairment . . . has the effect only of reducing that occupational base marginally[.]" *Id.* "[A]though a nonexertional impairment can have a negligible effect, ordinarily the ALJ must back such a finding of negligible effect with the evidence to substantiate it, unless the matter is self-evident." *Seavey v. Barnhart,* 276 F.3d 1, 7 (1st Cir. 2001) (citation and internal quotation marks omitted).

At the plaintiff observes, *see* Statement of Errors at 2-3, the need for a sit-stand option involving fairly frequent breaks (standing and stretching for a few minutes every hour) erodes the occupational base sufficiently to preclude reliance on the Grid and necessitate the testimony of a vocational expert, *see* SSR 96-9p at 158 ("An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded."); Social Security Ruling 83-12, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 40 ("Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS [vocational specialist] should be consulted to clarify the implications for the occupational base."); *Rosado,* 807 F.2d at 293 ("[A] determination that a claimant is able to perform sedentary work must be predicated upon a finding that the claimant can sit most of the day, with occasional interruptions of short duration.") (citations and internal quotation marks omitted).

Reversal and remand accordingly are warranted to permit an administrate law judge to resolve conflicting evidence concerning the need for a sit-stand option and, if such a need is found, elicit the testimony of a vocational expert concerning the availability of work.[9]

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 22nd day of December, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[9] I need not reach the plaintiff's second point of error: that, in omitting the need for a sit-stand option, the administrative law judge based functional capacity assessments on a raw medical record. *See* Statement of Errors at 3-4. In any event, given the administrative law judge's failure to discuss the sit-stand option, it is far from clear that he interpreted raw medical evidence, *versus* accidently omitting the sit-stand option from his RFC finding or relying *sub silentio* on the Hayes RFC assessment.